UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| 615 RIVER ROAD PARTNERS, LLC., | Civ. No. 2:17-12659 |
| Plaintiff, | OPINION |
| v. | |
| BOROUGH OF EDGEWATER, | |
| Defendant. | |

**John Michael Vazquez, U.S.D.J.:**

This matter comes before the Court on Defendant's Borough of Edgewater's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 16. The Court reviewed the parties' submissions in support and in opposition, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, the motion is **DENIED**.

**I. BACKGROUND**

Plaintiff 615 River Road Partners ("Plaintiff") brings this action against the Borough of Edgewater ("Defendant" or "Edgewater") and 100 fictitious individuals. *See* Compl., ECF No. 1. Plaintiff asserts that Defendant violated its Equal Protection (Count One), Substantive Due Process (Count Two), and First-Amendment (Count Three) rights by making it impossible for Plaintiff to develop a parcel of land it purchased before expropriating it.

According to the Complaint, Plaintiff purchased a parcel of land located in Edgewater, New Jersey (the "Parcel") in 2014. *Id.* ¶ 31. Though the Parcel was not zoned for residential use, Plaintiff planned to turn the Parcel into a large housing development, including five high-rise residential buildings (with 20% affordable-housing), public parks, and mass-transit improvements.

*Id.* ¶ 11. To do so, the Parcel required extensive and expensive environmental remediation. *Id.* ¶¶ 11, 33. Defendant facilitated that remediation by issuing permits. *Id.* Plaintiff also met with Defendant to discuss its development plan before closing on the Parcel and repeatedly asked for feedback on its plans. *Id.* ¶ 32. Once remediation was complete, Plaintiff expected that obtaining zoning relief would be unproblematic, as "Edgewater has granted zoning relief in some form to every similarly situated waterfront parcel." *Id.* ¶ 12.

Contrary to Plaintiff's expectations, Plaintiff has not been able to obtain zoning relief. Plaintiff alleges that—due to Edgewater's government officials' inappropriate connection to a rival developer, Fred Daibes—Defendant has illegally obstructed Plaintiff's efforts by (1) refusing to meet with Plaintiff to discuss the development plan for three years; (2) imposing obstacles to Plaintiff's use-variance application, including requiring the application to be divided in two and delaying its review for contrived reasons; and (3) after Plaintiff lost a lawsuit for automatic approval of its zoning-relief application, voting to acquire the parcel by purchase or condemnation for pretextual reasons. *Id.* ¶¶ 1, 12, 44, 97, 107-08.

Plaintiff alleges these actions departed significantly from Defendant's usual practice, in which zoning-relief applications are quickly processed and approved. Plaintiff accuses Defendant of engaging in the disparate treatment—culminating in pretextual condemnation—to benefit Daibes. Defendant's conduct is alleged to be part of a decades-long conspiracy involving Daibes, his various companies, and Edgewater municipal officials. *Id.* ¶ 4. According to Plaintiff:

> Daibes and his Entities provide important Edgewater municipal officials and their families with, among other things, undisclosed cash payments . . ., employment at Daibes Entities and governmental agencies that are controlled by Daibes' political allies, below-market rental apartments in Daibes-owned buildings, loans and credit facilities from the Daibes-controlled Mariner's Bank, free use of a Daibes-owned restaurant, and the opportunity to purchase

real property owned by Mariner's Bank for a fraction of the fair market value.

*Id.* ¶ 5. In exchange, Edgewater officials allegedly act in Daibes interest at the "expense of competing real-estate developers, low-income residents, and the public trust." *Id.* ¶ 4.

Consistent with the conspiracy, when Plaintiff purchased the Parcel, Daibes allegedly said, "[T]hey should have come to me in the beginning. I own and built this town. Now it will be condemned." *Id.* ¶ 57. According to the Complaint, that is precisely what happened. "Edgewater's decision to condemn the property was made without public hearings, studies, findings of any kind, or support from [Edgewater's] own Master Plan." *Id.* ¶ 13. The purported reason to condemn the property—to relocate Edgewater's small Public Works Department to the Parcel[1]—leaves it "as the only significant vacant parcel of waterfront property in the Borough that has not been permitted [for] residential use." *Id.* Coincidentally, Daibes owns other waterfront parcels, that were re-zoned for residential use and on which he has built apartments like those planned by Plaintiff. *See id.* ¶ 16.

In response to Edgewater's actions, Plaintiff initiated this three-count lawsuit, alleging constitutional violations pursuant to 42 U.S.C. §§ 1983, 1988. In Count One, Plaintiff alleges that Defendant violated its right to Equal Protection by "intentionally treating Plaintiff differently from others similarly situated" with "no rational basis" while "acting under color of state law." *Id.* ¶¶ 119-20. In Count Two, Plaintiff asserts Substantive Due Process violations because Defendant's actions, taken under color of law, "were . . . not rationally related to a legitimate state interest and/or were . . . motivated by bias, bad faith, and/or partisan political reasons or personal

---

[1] Defendant also plans to construct public parks and parking lots. *Id.* ¶ 45. But public parks and parking were included in Plaintiff's development plan, in which Plaintiff (not the taxpayers) would fund construction. *See id.*

reasons unrelated to a proper governmental purpose, and shock the conscience." *Id.* ¶¶ 125-26. Count Three alleges violations of Plaintiff's First Amendment rights because Defendant's actions were allegedly "based, in part, on [its] intent to retaliate against Plaintiff for" engaging in public-interest litigation (discussed below). *Id.* ¶¶ 131, 135.

This matter is not the first litigation to result from the above-described (and related) conduct. In *In re Borough of Edgewater*, No. BER-L-6364-15 ("DJ Action"), Edgewater seeks a declaration that its affordable housing plan meets the requirements of New Jersey law. Compl. ¶ 100. The state court granted Plaintiff's motion to intervene "as a property owner in the Borough seeking to build affordable housing." *Id.* In this matter, Plaintiff alleges it is being retaliated against for intervening in the DJ Action.

Separately, Plaintiff filed *615 River Road Partners, LLC v. Edgewater Zoning Board of Adjustment and John Candelmo*, No. BER-L-2020-16 ("Zoning Action"). Compl. ¶ 106. In that case, Plaintiff urged the court to deem Edgewater's zoning board's ("EZB's") delayed review of its zoning-relief application violative of New Jersey law. *Id.* Plaintiff argued that because EZB took longer than the statutorily prescribed time to review its zoning-relief application, it should have automatically been deemed complete and approved. *Id.* ¶ 105. In June 2017, the court granted Edgewater summary judgment, and Plaintiff appealed. *Id.* ¶ 106.

In December 2016, Plaintiff filed another state-court action, captioned *615 River Road Partners v. Borough of Edgewater*, No. BER-L-0090-17 ("Overlay-Ordinance Action"). In the Overlay-Ordinance Action, Plaintiff challenges a November 2016 ordinance adopted by Edgewater that establishes an "overlay zone" to bookmark properties for affordable housing construction. Compl. ¶ 109. Plaintiff is challenging the ordinance as arbitrary, capricious, and unreasonable because it impermissibly treats similarly situated properties differently. *Id.* ¶ 110.

4

In May 2017, Plaintiff filed yet another state action, captioned *615 River Road Partners, LLC v. Borough of Edgewater, et al*., No. BER-L-003638-17 ("iPark Action," and together with the above, "State Actions"). Compl. ¶ 111. Plaintiff filed the iPark Action after Edgewater represented in the DJ Action that—due to the lack of completed affordable housing units—no further certificates of occupancy would be issued for the "iPark Project," a Daibes-involved development. *Id.* ¶ 89, 113. After Plaintiff filed an Open Public Records Act request, they learned an Edgewater official had issued two additional certificates. *Id.* ¶ 112. The court in the iPark Action determined that Edgewater violated state affordable-housing laws and required iPark to build seventy-five affordable-housing units. *Id.* ¶ 114.

## II. DISCUSSION

Defendant moves to dismiss this matter under FRCP 12(b)(1) and 12(b)(6), arguing that (1) the Court lacks subject-matter jurisdiction pursuant to the *Rooker-Feldman* Doctrine, (2) the claims are not ripe, and (3) the Court should abstain on comity-related grounds. In lengthy briefing, the parties vigorously disagree on all three points. *See* ECF Nos. 16, 18, 20, 28, 29-30, 40-41, 86, 91, 95.

### A. Facial Versus Factual Challenge

Federal Rule of Civil Procedure 12(b)(1) permits a motion to dismiss for lack of subject-matter jurisdiction, while Rule 12(b)(6) addresses a motion to dismiss for failure" to state a claim upon which relief can be granted." Defendant urges the Court to consider facts beyond the Complaint in analyzing all three of its three arguments. *See* MTD at 8-11. Thus, as to its Rule 12(b)(1) motion, Defendant makes a "factual" attack to the Court's subject-matter jurisdiction.

Normally, in analyzing Rule 12(b)(1) factual attacks, "no presumptive truthfulness attaches to plaintiff's allegations." *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*,

5

673 F.2d 700, 711 (3d Cir. 1982) (citation omitted). However, "[i]f the defendant raises no challenge to the facts alleged in the pleadings, the court may rule on the motion by accepting the allegations as true." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000), *modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003) (discussing *Int'l Ass'n of Machinists & Aerospace Workers*, 673 F.2d at 711). And specifically as to arguments regarding a failure to exhaust available remedies (i.e., Plaintiff's ripeness arguments), analysis under FRCP 12(b)(6) (accepting the allegations as true)—and *not* FRCP 12(b)(1)—is appropriate. *Anjelino v. New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999).

Here, Defendant's arguments do not challenge the facts alleged in the Complaint. Rather, Edgewater argues that the pending and anticipated State Actions deprive this Court of jurisdiction, given their relation to the allegations here. *See* MTD at 12-14 (listing allegations in Complaint before concluding Plaintiff "cannot maintain that [the alleged facts] are not inexorably intertwined with the [Zoning Action]"); 15-25 (asserting unripeness for lack of finality); 25-40 (arguing for abstention due to State Actions and their relation to the facts alleged). Therefore, the Court "may rule on the motion by accepting the allegations as true," *Gould Elecs. Inc.*, 220 F.3d at 177, and does so here.

### B. <u>Rooker-Feldman Doctrine</u>

Defendant asserts that due to the State Actions, this Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* Doctrine. MTD at 12-14, ECF No. 16. Established by two Supreme Court opinions of the same name, the *Rooker-Feldman* Doctrine deprives federal courts of jurisdiction where a federal suit follows a state suit. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163–64 (3d Cir. 2010). Four requirements must be met: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court

6

judgment; (3) the judgment was rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgment. *Id.* at 166 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005)).

Here, none of the elements are satisfied for most of the State Actions. In this matter, Plaintiff is raiding constitutional challenges to Defendant's actions. Plaintiff is not asking this Court to overrule state-court judgments. The only State Action that meets the first and third elements is the Zoning Action. *See* Stone Aff, Ex. 9, Zoning Action Order and Opinion (June 14, 2017), ECF 16-4. However, the second and fourth elements preclude application of the *Rooker-Feldman* Doctrine.

With respect to the second element, when "a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *Rooker–Feldman* is not a bar to federal jurisdiction." *Great W. Mining & Mineral Co.*, 615 F.3d at 167. "A useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Id.*

Here, Plaintiff complains that Defendant violated its (1) Equal Protection, (2) Substantive Due Process, and (3) First Amendment rights. Compl. ¶¶ 118-36. The alleged violations of those rights, and the associated injuries, occurred *before* the Zoning Action Opinion was handed down, or, in the case of the alleged improper condemnation, have nothing to do with the Zoning Action. In other words, it is not the state-court judgment itself that allegedly injured Plaintiff, but Defendant's *conduct* which led to the State Action (i.e., subjecting Plaintiff to allegedly unconstitutional conduct). Under these circumstances, *Rooker-Feldman* does not apply. *See Great W. Mining & Mineral Co.*, 615 F.3d at 166.

The fourth element—that Plaintiff is inviting the Court to review and reject the state judgments—is also lacking. "What this requirement targets is whether the plaintiff's claims will require appellate review of state-court decisions by the district court. Prohibited appellate review consists of a review of the proceedings already conducted by the [state] tribunal to determine whether it reached its result in accordance with law." *Id.* at 169. Here, Plaintiff seeks no such appellate review. Plaintiff does not request an order vacating the Zoning Action opinion. *Cf. Khalil v. New Jersey Div. of Child Prot. & Permanency*, 594 F. App'x 88, 90 (3d Cir. 2015) (applying *Rooker-Feldman* Doctrine where plaintiff sought to overturn state court decision to terminate parental rights). Instead, Plaintiff seeks relief from Defendant's allegedly unconstitutional conduct pursuant to a corrupt scheme. The Third Circuit has specifically pointed to this type of claim as failing the "appellate review" element. *See id.* at 90-91 (explaining that *Rooker Feldman* did not apply in *Great West Mining & Mineral Co. v. Fox Rothschild LLP* because there, the Plaintiff alleged a conspiracy engineering the state-court result, thus violating plaintiff's independent right to an impartial forum, not challenging the state-court decision itself). It is immaterial whether a judgment in Plaintiff's favor would require this Court to reach a different conclusion of law or fact than the state court. *See Great W. Mining & Mineral Co.*, 615 F.3d at 169 ("When the [federal] court tries a matter anew and reaches a conclusion contrary to a judgment by the [state] court, . . . the [federal court] is not conducting appellate review." (cleaned up)).

Therefore, the *Rooker-Feldman* Doctrine does not deprive this Court of jurisdiction.

**C.     Ripeness**

Defendant alternatively argues that Plaintiff's claims are unripe, specifically because the State Actions have not reached a final decision. MTD at 15-25.

For Substantive Due Process and Equal Protection claims challenging the denial of a permit or the lack of adequate compensation for expropriated property, "finality" and "exhaustion" rules typically apply. *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006). Such claims are

> not ripe until (1) the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue (the "finality rule"), and (2) the plaintiff has unsuccessfully exhausted the state's procedures for seeking "just compensation," so long as the procedures provided by the state were adequate [(the "exhaustion rule")].

*Id.* (citation omitted).

However, in *Blanche Road Corp. v. Bensalem Township*, the Third Circuit ruled that claims did not have to meet the finality and exhaustion requirements in the following circumstances:

> [W]here, instead of "appealing from an adverse decision on a permit application," the plaintiff claimed that the defendant Township officers "deliberately and improperly interfered with the process by which the Township issued permits, in order to block or to delay the issuance of plaintiff's permits, and that defendants did so for reasons unrelated to the merits to the application for the permits."

*Id.* at 166 (quoting *Blanche Road Corp. v. Bensalem Twp.*, 57 F.3d 253, 267-68 (3d Cir.1995)). Even where plaintiffs receive a favorable final outcome (i.e., the permit is eventually granted), the abusive government conduct gives rise to the constitutional claim, and "no further appeals [are] necessary in order to have a ripe, final determination for a federal court to review." *Id.*

As discussed above, Plaintiff's claims arise from Edgewater officials' allegedly corrupt conduct; Plaintiff is not appealing the State Actions or EZB's application of the zoning law to the Parcel. *See supra* Part II.B.2. The Equal Protection Count is based on Edgewater's treatment of Plaintiff differently than similarly-situated developers, in particular Daibes, due to Daibes's improper influence. *See* Compl. ¶¶ 118-23. The Substantive Due Process Count is based on

9

Plaintiff's continuing harm due to an unfair permitting and condemnation process, not the outcome of that process. *See id.* ¶¶ 124-28. And the First Amendment Count is based on the conduct Edgewater officials already took, allegedly in retaliation for Plaintiff exercising its First-Amendment rights. *See id.* ¶¶ 129-36. Therefore, like in *Blanche Road Corp.*, the finality and exhaustion rules do not bar Plaintiff's claims. *See Blanche Road Corp.*, 57 F.3d at 268. *Cf. E&R Enter. LLC v. Rehoboth Beach*, 650 F. App'x 811, 814-15 (3d Cir. 2016) (declining to wave finality requirement where plaintiff *failed to plead factual allegations* supporting their argument that city officials "hijacked" the permit process).

As finality and exhaustion are not obstacles, the Court must decide whether the claims are sufficiently ripe under traditional considerations. "Ripeness is a matter of degree whose threshold is notoriously hard to pinpoint." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001). "[T]wo fundamental considerations for determination of a ripeness question [are]: (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Id.* (citation omitted).

Here, both factors point toward ripeness. Regarding factor one, Plaintiff complains of specific, past conduct and is not attempting an end-run around the State Actions. The parties are also completely adverse. *See id.* at 341, n.8 (including "whether the claim involves uncertain and contingent events that may not occur as anticipated or at all" and "whether the parties to the action are sufficiently adverse" as relevant to factor one).

As to factor two, Plaintiff faces an unfair dilemma if Defendant's requested relief is granted. *Id.* ("The 'hardship' consideration focuses on whether a plaintiff faces a direct and immediate dilemma, such that lack of review will put it to costly choices."). Defendant would have the Court dismiss this matter and require Plaintiff to resubmit its zoning-relief application

even though Edgewater marches toward condemning the Parcel. *See* MTD at 2. Yet, Defendant has commissioned an appraisal in moving towards condemnation. Pl. Sur-Reply at 2, ECF No. 40. That appraisal was based on the Parcel's current, non-residential zoning classification, and the appraiser did not consider a change (and thus a higher valuation) because "the possibility of a zoning change or use variance is so remote as to lack any reasonable possibility." *Id.* The dilemma for Plaintiff is that *it is Edgewater* that determines the feasibility of any zoning change. And due to Daibes allegedly improper influence over Edgewater and the EZB, Plaintiff agrees with the appraiser that a re-zoning application will be denied. Thus, Plaintiff is stuck. It can incur the expense of submitting another rezoning application, the denial of which (allegedly assured by Daibes' influence) can be used in future condemnation proceedings to bolster the appraiser's determination of the likelihood of rezoning (and associated depressed valuation). Or, Plaintiff can decline to re-apply, in which case Edgewater will stand on the appraiser's valuation based on the Parcel's non-residential use zoning.

Therefore, both "fundamental considerations" point in Plaintiff's favor, *see NE Hub Partners, L.P.*, 239 F.3d at 341, and the claims are ripe for federal litigation.

### D. Comity and Abstention Doctrines

Defendant's remaining arguments are that this Court should abstain pursuant to the *Burford*-, *Younger*-, *Colorado-River*-, and *Pullman*-abstention doctrines, or alternatively "based on comity." MTD at 25-40.

Abstaining pursuant to "*Burford* . . . is proper when questions of state law in which the state has expressed a desire to establish a coherent policy with respect to a matter of substantial public concern are presented." *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 83 (3d Cir. 2011). Defendant contends New Jersey and local land-use laws are just this type of policy, and thus this

Court should abstain. MTD at 25-32. As the Third Circuit recently reiterated, "to trigger *Burford* abstention, an action must challenge a state's regulatory scheme, rather than actions taken under color of the scheme. *Gov't Employees Ins. Co v. Tri Cty. Neurology & Rehab. LLC*, 721 F. App'x 118, 122 (3d Cir. 2018) (citing *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 409-10 (3d Cir. 2005)). Here, Plaintiff does not challenge New Jersey's or Edgewater's zoning, land-use, affordable housing, or condemnation regimes. Instead, Plaintiff challenges Defendant's "actions taken under color of" those regimes. *Id.* Accordingly, *Burford* is inapplicable.

*Younger* abstention is appropriate when (1) "there is a parallel, pending state *criminal* proceeding." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (emphasis added). *Younger* abstention has been narrowly extended to (2) "civil enforcement proceedings" and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* (citation omitted). Without citation, Defendant argues the State Actions fit into the third category "because of the unique and Constitutionally mandated affordable housing and eminent domain proceedings." Reply at 19, ECF No. 28. But contrary to Defendant's assertion, "the third category of abstention-worthy disputes has been applied only to a few exceptional types of cases . . . such as child custody proceedings, civil contempt orders, and requirements for posting bonds pending appeal." *See Godfrey v. Upland Borough*, 246 F. Supp. 3d 1078, 1094 & nn.73-74 (E.D. Pa. 2017) (collecting cases). The State Actions do not fit into this, or any other, narrow category of abstention-appropriate cases. Therefore, *Younger* abstention is inappropriate.

"In *Colorado River*, the Supreme Court recognized that there are certain extremely limited circumstances in which a federal court may defer to pending state court proceedings." *Ryan v. Johnson*, 115 F.3d 193, 195–96 (3d Cir. 1997) (citing *Colorado River Water Conservation Dist.*

*v. United States*, 424 U.S. 800, 817 (1976)). "A threshold issue that must be decided in any *Colorado River* abstention case is whether the two actions are 'parallel.' If they are not, then the district court lacks the power to abstain." *Id.* "Generally, cases are parallel when they involve the same parties and claims." *Id.* Here, none of the State Actions involve the same claims. Therefore, the actions are not "parallel," and *Colorado River* abstention is inappropriate. *See id.*

For *Pullman* abstention to apply, three "exceptional circumstances" must be present: (1) "there must be uncertain issues of state law underlying the federal constitutional claims"; (2) "the state law issues must be amenable to a state court interpretation which could obviate the need to adjudicate or substantially narrow the scope of the federal constitutional claim"; and (3) "an erroneous construction of state law by the federal court would disrupt important state policies." *Planned Parenthood of Cent. New Jersey v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000) (cleaned up). When the policies underlying state or local laws are not being attacked, and "it is rather the application of those policies by a single township that is at issue," *Pullman* abstention is inappropriate. *Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 748 (3d Cir. 1982); *see also Colony Ins. Co. v. Troensa Constr., Inc.*, 17-cv-3577, 2018 WL 4676038, at *8 (D.N.J. Sept. 28, 2018) (finding *Pullman* abstention inapplicable where case "does not appear to turn on any unsettled question of state law or important policy issue").

Here, the case does not appear to turn on any unsettled question of state law. Just like in *Heritage Farms, Inc. v. Solebury Township*, this "is not simply a land use case. Rather the plaintiffs have alleged that [Defendant] used their governmental offices to further an illegal conspiracy to destroy plaintiffs' constitutional rights." *Heritage Farms, Inc.*, 671 F.2d at 748. Plaintiff does not attack any zoning-relief, affordable-housing, or eminent-domain regime, only

13

their allegedly unconstitutional application. Therefore, like in *Heritage Farms*, *Pullman* abstention is inapplicable. *Id.* at 748.

In its final argument, Defendant asserts this Court should abstain "[b]ased on [c]omity." MTD at 37. However, "[f]ederal courts . . . have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (citation omitted). If jurisdiction exists, "a federal court's obligation to hear and decide a case is virtually unflagging." *Id.* (citations omitted). As this Court has jurisdiction to hear Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 & 1343, and Defendant cites no convincing precedent or rule depriving this Court of that jurisdiction, the Court lacks authority to abstain "based on comity."

## III. CONCLUSION

For the reasons set forth above, Defendant Borough of Edgewater's motion to dismiss, ECF No. 16, is **DENIED**. An appropriate Order accompanies this Opinion.

Dated: April 30, 2019

s/ John Michael Vazquez
John Michael Vazquez, U.S.D.J.