**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| 615 RIVER ROAD PARTNERS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>- against -<br><br>BOROUGH OF EDGEWATER, a municipal corporation of the State of New Jersey, and JOHN DOES and JANE DOES Nos. 1 – 100,<br><br>Defendants. | CIVIL ACTION NO.<br>2:17-cv-12659-JMV-CLW<br><br>Hon. John Michael Vazquez<br>Hon. Cathy L. Waldor |

PLAINTIFF 615 RIVER ROAD PARTNERS, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO EDGEWATER'S MOTION TO ENFORCE SETTLEMENT (ECF NO. 185)

PASHMAN STEIN WALDER HAYDEN, P.C.
Justin P. Walder
Roger Plawker
David N. Cinotti
Howard Pashman
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
(201) 488-8200
jwalder@pashmanstein.com
rplawker@pashmanstein.com
dcinotti@pashmanstein.com
hpashman@pashmanstein.com

GREENBERG TRAURIG, LLP
Cory Mitchell Gray
Theodore J. McEvoy
500 Campus Drive
Suite 400
Florham Park, NJ 07932
(973) 360-7900
grayc@gtlaw.com
mcevoyt@gtlaw.com

Dated:  September 6, 2022

Motion Day:  September 19, 2022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................ 3

    I.   Pending Litigation in State Court on Essential Threshold Issue ........................ 3

    II.  History of Dispute ................................................................................ 4

    III. Current State Court Challenges to the Settlement Agreement ........................ 6

        A.  Case No. BER-L-8788-19 ................................................................. 6

        B.  Case No. BER-L-4882-20 and Case No. BER-L-5095-20 ........................ 7

    IV. An Accurate Presentation of the Settlement Agreement ............................... 8

ARGUMENT .................................................................................................... 12

    I.   THIS COURT SHOULD REFRAIN FROM DECIDING THIS MOTION
        PENDING DECISION IN THE STATE COURT ACTION. .......................... 12

        A.  The Court has inherent authority to postpone decision on this motion pending
             resolution of the State Court Action. ............................................... 12

        B.  The State Court Action may substantially affect and is potentially dispositive
             of this motion. ............................................................................. 13

        C.  In the alternative, the Court should abstain under *Colorado River.* ......... 17

    II.  EDGEWATER'S INTERPRETATION OF THE SETTLEMENT AGREEMENT
        IS WRONG. ....................................................................................... 18

        A.  Edgewater's delivery of a legally enforceable Redevelopment Agreement is a
             condition precedent to the obligation to transfer the Western Parcel ......... 18

        B.  Other provisions of the Settlement Agreement support that conclusion. ....... 20

        C.  Select provisions of an illegal contract cannot be enforced if the essence or
             purpose of the contract is frustrated. .............................................. 22

        D.  615 RRP's performance obligations may be excused by Edgewater's
             breaches. ..................................................................................... 23

    III. EDGEWATER HAS NOT SHOWN AN ENTITLEMENT TO ANY OTHER
        RELIEF SOUGHT IN LAW OR EQUITY. .............................................. 25

        A.  There is no evidence of ill motive as required to maintain a claim for breach
             of the covenant of good faith and fair dealing. .................................. 25

        B.  There is no basis for an order of contempt. ....................................... 25

        C.  There is no basis to create or prioritize a lien. .................................. 27

        D.  There is no basis for imposition of a constructive trust. ....................... 29

CONCLUSION .................................................................................................. 30

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*,
    544 F.2d 1207 (3d Cir. 1976)......................................................................... 12, 13

*Biviano v. Avella*,
    No. A–1, 778–15T4, 2018 WL 2207977 (N.J. Super. Ct. App. Div. 2018) ............................ 29

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*,
    864 A.2d 387 (N.J. 2005)........................................................................... 25

*Dessel v. Dessel*,
    299 A.2d 410 (N.J. Super. Ct. App. Div. 1972)......................................................... 29

*D'Ippolito v. Castoro*,
    242 A.2d 617 (N.J. 1968)........................................................................... 30

*Edmondson v. Lilliston Ford, Inc.*,
    Civil No. 13-7704 (RMB/MJS), 2021 WL 2651143 (D.N.J. June 24, 2021).......................... 26

*Flanigan v. Munson*,
    818 A.2d 1275 (N.J. 2003)........................................................................ 29, 30

*Geraczynski v. Nat'l R.R. Passenger Corp.*,
    No. 11-6385 (SRC), 2015 WL 4623466 (D.N.J. July 31, 2015) ............................. 19

*Healy v. Fairleigh Dickinson Univ.*,
    671 A.2d 182 (N.J. Super. Ct. App. Div. 1996)........................................................ 21

*In re Steel Wheels Trans., LLC*,
    Bankr. No. 06–15377 DHS, 2011 WL 5900958 (Bankr. D.N.J. Oct. 28, 2011) ...................... 29

*J.L. Davis & Assocs. v. Heidler*,
    622 A.2d 923 (N.J. Super. Ct. App. Div. 1993)......................................................... 22

*Jacob v. Norris McLaughlin & Marcus*,
    607 A.2d 142 (N.J. 1992)........................................................................... 23

*Krosnowski v. Krosnowski*,
    126 A.2d 182 (N.J. 1956)........................................................................... 22

ii

*Landis v. N. Am. Co.*,
 299 U.S. 248 (1936) ................................................................................................ 12

*Liberty Mut. Ins. Co. v. Land*,
 892 A.2d 1240 (N.J. 2006) ...................................................................................... 29

*Marchak v. Claridge Commons, Inc.*,
 633 A.2d 531 (N.J. 1993) ........................................................................................ 19

*Mastec Renewables Constr. Co., Inc. v. Mercer Cnty. Improvement Auth.*,
 No. CIV. 15-1897 (FLW)(LHG), 2017 WL 6493141 (D.N.J. Dec. 19, 2017) ........ 13

*McDonald v. Novartis Pharms., Corp.*,
 No. CIV. 07-655 (JBS), 2007 WL 4191750 (D.N.J. Nov. 20, 2007) ...................... 13

*MEI, Inc. v. JCM Am. Corp.*,
 No. CIV. 09-351 (RBK/JS), 2009 WL 3335866 (D.N.J. Oct. 15, 2009) ................. 13

*Midtown Props., Inc. v. Twp. of Madison*,
 172 A.2d 40 (N.J. Super. Ct. Law Div. 1961) *aff'd for reasons stated by trial court*,
 189 A.2d 226 (N.J. Super. Ct. App. Div. 1963) ................................................. 14, 16

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
 571 F.3d 299 (3d Cir. 2009) .................................................................................... 17

*Newark Publishers' Ass'n v. Newark Typographical Union*,
 126 A.2d 348 (N.J. 1956) ................................................................................... 20, 21

*Nolan v. Lee Ho*,
 577 A.2d 143 (N.J. 1990) ........................................................................................ 24

*Phoenix Pinelands Corp. v. Davidoff*,
 254 A.3d 1190 (N.J. Super. Ct. App. Div. 2021) .................................................... 20

*Republic Bus. Credit Corp. v. Camhe-Marcille*,
 887 A.2d 185 (N.J. Super. Ct. App. Div. 2005) ...................................................... 20

*Ross Sys. v. Linden Dari-Delite, Inc.*,
 173 A.2d 258 (N.J. 1961) ........................................................................................ 24

*Suski v. Mayor & Comm'rs of Borough of Beach Haven*,
 333 A.2d 25 (N.J. App. Div. 1975) ......................................................................... 15

*Taggart v. Lorenzen*,
 139 S. Ct. 1795 (2019) ............................................................................................ 25

*Thompson v. City of Atl. City*,
  901 A.2d 428 (N.J. Super. Ct. App. Div. 2006)........................................................ 30

*Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Tax'n*,
  999 A.2d 489 (N.J. Super. Ct. App. Div. 2010)....................................................... 19

*Wong v. Ford*,
  Civil Action No. 05-3501 (AET), 2008 WL 11511395 (D.N.J. Feb. 28, 2008)....................... 28

**Statutes**

N.J.S.A. 40:55D-1................................................................................................... 8
N.J.S.A. 40A:12A-1................................................................................................. 8

**Rules**

N.J. Ct. R. 4:69-4 .................................................................................................. 4
N.J. Ct. R. 1:36-3 .................................................................................................. 29

**Other Authorities**

*Restatement (Second) of Contracts* § 237 (1981) ......................................................... 24

## PRELIMINARY STATEMENT

Edgewater's motion to compel specific performance of isolated provisions of the Settlement Agreement should be stayed or denied because: 1) the threshold issue of the legality and enforceability of the Settlement Agreement has recently been tried in New Jersey Superior Court, and the state courts' determination will likely moot this motion:  either the state courts will uphold the Settlement Agreement and 615 River Road Partners, LLC ("615 RRP") will transfer the Western Parcel, or the state courts will find the Settlement Agreement improper in which case there would be no transfer obligation to enforce; 2) Edgewater's delivery of a legally valid and enforceable Redevelopment Agreement is a condition precedent to 615 RRP's obligation to transfer, and that condition precedent cannot be satisfied while the state-court plaintiffs are challenging the validity and enforceability of the Redevelopment Agreement; and 3) if the state courts determine that the Settlement Agreement was unlawful because Edgewater failed to follow one or more legal requirements for the hearing and approval of municipal action, then Edgewater will have materially breached the Settlement Agreement, relieving 615 RRP of the duty to transfer the Western Parcel.

As a threshold matter, it is axiomatic that if the Settlement Agreement is voided in the state-court proceedings, any alleged obligations thereunder are unenforceable.  On July 21, 2022, a prerogative-writ trial was conducted in the New Jersey Superior Court before the Hon. Gregg A. Padovano, J.S.C., who has presided over numerous actions pertaining to 615 RRP's property. Presently before Judge Padovano are challenges to the validity of the Settlement Agreement (filed in November 2019) by third-party "objectors."  Those challenges allege, in summary, that 1) the Settlement Agreement is void *ab initio* because it did not comply with state-law procedure and otherwise constitutes illegal contract zoning, and 2) designation of the subject property as an area

in need of redevelopment was not supported under New Jersey law.  Accordingly, the issue of the legality—and, therefore, the enforceability—of the Settlement Agreement has been briefed, tried, and is pending adjudication in state court.  This Court should exercise its discretion to hold the motion in abeyance or stay it pending a decision on those issues in state court.

If this Court reaches the merits, Edgewater's motion should be denied because Edgewater's interpretation of the Settlement Agreement is wrong.  The Settlement Agreement requires 615 RRP to transfer the Western Parcel upon Edgewater's "execution" of a Redevelopment Agreement, following the required statutory processes to designate the Eastern Parcel as an area in need of redevelopment.  The term "execution," by definition, requires a legally valid and enforceable agreement, not merely a signed document.  The state-court plaintiffs challenge, among other things, whether Edgewater had authority to enter into the Redevelopment Agreement and whether the agreement complies with applicable New Jersey state law.  Because whether a legally valid and enforceable Redevelopment Agreement exists between Edgewater and 615 RRP is being litigated in state court, 615 RRP does not yet have an obligation to transfer the Western Parcel.

In addition, a plain reading of the contract, when viewed as a whole—unlike the select terms that Edgewater presents in a vacuum—highlight the obvious flaw in Edgewater's reading of the Agreement.  The Agreement contains an entire section entitled *Maintenance of Status Quo Ante* establishing the preservation of all evidence, claims, and defenses in the federal action and tolling the statutes of limitation due specifically to the potential of a successful state-court challenge—as is now pending.  Conveyance of 615 RRP's land is plainly not the *status quo ante*.

Moreover, as Edgewater argues and as the Settlement Agreement recites, the conveyance of land it seeks to compel was for land intended to be used to construct a new public school.  But Edgewater ignores that the stated purpose of the conveyance of the Western Parcel was to address

the influx of families anticipated to be caused by 615 RRP's project.  In fact, the Settlement Agreement refers to the 615 RRP project as a "causal nexus" for the conveyance.  Without that project—presently in question in state court and a material objective of the Settlement Agreement—the stated purpose of the land conveyance for a school is eliminated.  Edgewater may not now assert that the Settlement Agreement contemplates a right to the land when the need for that land may be nullified.

For the foregoing reasons, and as set forth more fully below, Edgewater's motion should be held in abeyance or denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Pending Litigation in State Court on Essential Threshold Issue

On July 21, 2022, a prerogative-writ trial was conducted in the Superior Court of New Jersey, Bergen County, before the Hon. Gregg A. Padovano, J.S.C. (the "State Court Action"). The State Court Action was commenced in 2019 by two "objectors" to 615 RRP's proposed development in Edgewater (the "Project").  The objectors are a local business and property owner, SJ 660, LLC ("SJ 660"), and the Borough of Cliffside Park.  The defendants in that matter are 615 RRP, the Borough of Edgewater, and the Planning Board of the Borough of Edgewater.

The claims in the State Court Action are that the 2019 Settlement Agreement was illegal and void *ab initio* and that the designation of 615 RRP's property as an area in need of redevelopment was unlawful because it did not meet the statutory criteria.  As counsel for SJ 660 summarized the arguments at trial on July 21, 2022:

> First is that the settlement agreement entered into by the Borough and 615 River Road in their federal lawsuit was void ab initio under six distinct legal theories, each of which we'll discuss. Second, we'll argue that the designation of the eastern parcel of 615 River Road violates the local redevelopment and housing law, is arbitrary, capricious, and unreasonable, and must be set aside.

Transcript of Trial, SJ 660, LLC v. Borough of Edgewater, No. BER-L-4882-20, July 21, 2022 ("Trial Tr."), at 7:15-22 (Declaration of Roger Plawker, Sept. 6, 2022 ("Plawker Decl."), Ex. A).

Although the State Court Action was commenced in December 2019, it did not reach trial until July 21, 2022, a highly atypical delay for a prerogative-writ matter, which by court rule is designed to be expedited. *See* N.J. Court R. 4:69-4. Notwithstanding an understandable degree of frustration with the pace of the fulfillment of each parties' expectations under the Settlement Agreement, Edgewater's present contention that it bargained for a wholly independent and expedited conveyance of the Western Parcel no matter what else happened, is unfounded and must be rejected. The threshold issue regarding the Settlement Agreement's legality is now pending adjudication, and 615 RRP is hopeful of a judgment that will permit the Project to move forward after many years of challenges.

## II.    History of Dispute

This dispute stretches back years and arises from efforts to develop land at 615 River Road in Edgewater as an inclusionary, multi-family, residential complex. The property appears on Edgewater's tax map as Block 77, Lot 1 (the "Western Parcel"), and Block 76, Lots 1 and 5 (the "Eastern Parcel"). The development efforts were accompanied by years of lawsuits in both state and federal courts. *See* 615 River Road Partners, LLC's Stmt. of Factual and Legal Issues and Exhibit List Pursuant to Rule 4:69-4, Jan. 11, 2021, at 3-5 (Plawker Decl., Ex. B).

Some of these suits were pending in state court, including a long-running action—filed in 2015—involving the non-profit affordable-housing organization, Fair Share Housing Center, that addressed Edgewater's compliance with its affordable-housing obligations. That suit was captioned In re Petition of the Borough of Edgewater, N.J. Super. Ct. Law Div., Dkt. No. BER-L-6364-15, and its resolution figures prominently in the Settlement Agreement. After a Fairness

4

Hearing and Final Compliance Hearing conducted by Judge Padovano in furtherance of the Settlement Agreement, a Final Judgment of Compliance and Repose dated November 30, 2021, was entered by which the Project would include the largest single component of Edgewater's affordable-housing plan.  *See* Final Judgment of Compliance and Repose, at 6-13 (Plawker Decl., Ex. C).  If the Settlement Agreement is voided, however, this affordable-housing victory will also be nullified.  Nonetheless, Edgewater maintains that its right to the Western Parcel is paramount and that it, alone, among the rights and obligations in the Settlement Agreement, would survive even if the Settlement Agreement is deemed void.

The lawsuits also included the within federal action, which 615 RRP filed in December 2017 against Edgewater.  615 RRP alleged that Edgewater violated its civil rights in its treatment of 615 RRP's proposed development.  *See, e.g.*, Compl. ¶¶ 1-10, ECF No. 1.  Edgewater vigorously denied the allegations in this action and litigated the case, as well as litigating the other land-use actions in state court, all at substantial public expense and with an uncertain outcome.  After years of disputes, litigation in multiple jurisdictions, mediation, and extensive negotiations, Edgewater and 615 RRP reached a global settlement reflected in a Settlement Agreement dated November 20, 2019.  This Court entered the Settlement Agreement as an order and retained jurisdiction to enforce the agreement.  *See* Stip. of Dismissal Without Prej. & Order, Dec. 20, 2019, ECF No. 184.  The Settlement Agreement further provided that **in the event this Court declined to exercise such jurisdiction, jurisdiction would lie in the Superior Court of New Jersey, Bergen County**—the court where the case and the seminal dispute over the validity of the Settlement Agreement is now pending.  Settlement Agreement ¶ 15.

5

### III.    Current State Court Challenges to the Settlement Agreement

### A.    Case No. BER-L-8788-19

On December 27, 2019, SJ 660, a property owner claiming to be impacted by the Project, commenced an action in lieu of prerogative writs against Edgewater in the New Jersey Superior Court, case number BER-L-8788-19. 615 RRP intervened as a defendant, and Cliffside Park intervened as a plaintiff.

SJ 660 and Cliffside Park raise essentially the same claims in their operative complaints. In its amended complaint, SJ 660 seeks a declaration that Edgewater's execution of the Settlement Agreement was *ultra vires* and that the Edgewater Council's resolution approving the Settlement Agreement was null and void.  Am. Compl. in Lieu of Prerogative Writs, No. BER-L-8788-19, Jan. 10, 2020, ¶¶ 13-18 (Plawker Decl., Ex. D).  SJ 660 alleges that the Edgewater Council's approval of the Settlement Agreement was "arbitrary, capricious, and unreasonable" because:

    (a) the Settlement Agreement violates the Local Redevelopment and Housing Law because it is allegedly a contract with a redeveloper for redevelopment of a property without following required processes;

    (b) the Settlement Agreement includes an illegal "purchasing" of zoning rights in violation of the Municipal Land Use Law because it calls for 615 RRP to deed the Western Parcel to Edgewater;

    (c) the Settlement Agreement fails to condition development of the Eastern Parcel on a new public school being built first or by a specified date on the Western Parcel;

    (d) the Council incorrectly believed that the Settlement Agreement would end the affordable-housing litigation because the Fair Share Housing Center was unlikely to agree to inclusion of 615 RRP's property in Edgewater's fair-share housing plan;

    (e) the Settlement Agreement was purportedly the result of "extortion" due to 615 RRP's allegations in this federal civil-rights action;

    (f) the Settlement Agreement renders any public participation illusory;

    (g) the Settlement Agreement anticipates legal challenges;

    (h) the Settlement Agreement usurps the Planning Board's authority;

    (i) the Settlement Agreement violates the requirement under *Whispering Woods* for a hearing to approve a settlement that results in rezoning;

    (j) the Settlement Agreement ignores the rights of taxpayers and others; and

    (k) the Council's vote was invalid due to conflicts of interest under the Local Government Ethics Law.

*See id.* ¶ 19(a)-(k).

Cliffside Park makes the same allegations in its complaint in intervention.  *See* Compl. in Interven., No. BER-L-8788-19, June 25, 2020, ¶ 29(a)-(k) (Plawker Decl., Ex. E); *see also* Suppl. Compl. in Interven., No. BER-L-8788-19, July 24, 2020, ¶¶ S4-S7 (Plawker Decl., Ex. F).

### B.  Case No. BER-L-4882-20 and Case No. BER-L-5095-20

On August 21, 2020 and September 1, 2020, SJ 660 and Cliffside Park, respectively, filed another action in lieu of prerogative writs alleging that: (a) the Planning Board's recommendation and the Council's resolution designating the Eastern Parcel as an area in need of redevelopment were invalid because the Eastern Parcel did not meet the requirements of an area in need of redevelopment under the New Jersey Local Redevelopment and Housing Law ("LRHL"); (b) the Planning Board relied on a report by a planner hired by 615 RRP, who had a conflict of interest; and (c) the Planning Board's and Council's approval of the Redevelopment Plan for the Property were invalid.  *See, e.g.*, Am. Compl. in Lieu of Prerogative Writs, No. BER-L-4882-20, Nov. 13, 2020, ¶¶ 90-124 (Plawker Decl., Ex. G); Am. Compl. in Lieu of Prerogative Writs, No. BER-L-5095-20, Nov. 18, 2020 (Plawker Decl., Ex. H).

The state court consolidated the three actions in an order dated August 6, 2021.  Pretrial briefing was ordered on December 20, 2021, and completed on April 11, 2022.  The matter was tried on July 21, 2022 and is pending a decision.[1]

---

[1] In addition to the pending challenges to the Settlement Agreement and designation of the property as an area in need of redevelopment, both SJ 660 and Cliffside Park have filed separate challenges to the Planning Board's approval of 615 RRP's site plan.  Those challenges were not part of the trial on July 21, 2022, and are only in the initial pleading stage, although, consistent with the expedited procedure under Rule 4:69-4 for prerogative writs, it is hoped they will be listed promptly for hearing.

## IV.    An Accurate Presentation of the Settlement Agreement

Although 615 RRP submits that this Court should decline to proceed to address Edgewater's motion, to the extent it determines to consider the substance of Edgewater's motion for specific performance of an isolated term of the Settlement Agreement, a more balanced and accurate discussion of the Settlement Agreement is necessary.

The core dispute throughout the history of the various litigations in state and federal court has concerned 615 RRP's right to develop the Project.  Not surprisingly, therefore, the primary focus of the Settlement Agreement is the Project and 615 RRP's right fairly to pursue its development, not conveyance of the Western Parcel.  Accordingly, the Settlement Agreement memorialized the process by which 615 RRP could undertake that pursuit.  Because land-use matters are of public concern, they are subject to statutory requirements.  The Settlement Agreement therefore mandated compliance with those state statutory requirements.

In that regard, the Settlement Agreement states:

**Page 5 (whereas clause):**

The settlement herein will, in part, provide 615 RRP with an **opportunity to develop** the Eastern Parcel in accordance with this Agreement, **conditioned on 615 RRP's compliance with the criteria and procedure** provided in the Municipal Land Use Law, N.J.S.A. 40:55D-1, et seq. ("MLUL"), New Jersey Local Redevelopment And Housing Law, N.J.S.A. 40A:12A-1, et seq. ("LRHL"), Affordable Housing Law, and other law and regulation where applicable.

**Paragraph 4(a):**

Edgewater shall (i) in accordance with its April 2017 Master Plan Re-Examination Report, designate the Eastern Parcel as an Area in Need of Redevelopment **as provided by New Jersey Local Redevelopment and Housing Law, N.J.S.A. 40A: 12A-1,** *et seq.***, upon receipt of a recommendation to that effect from the Edgewater Planning Board.**

**Paragraph 4(d):**

> The parties hereto agree that this Agreement is not in conflict with the MLUL, the LRHL and/or the municipal ordinances of the Borough of Edgewater, and **that nothing herein is or shall be deemed by the Parties to be in derogation thereof or of Edgewater's and the Planning Board's obligations and duties thereunder.**

Settlement Agreement at 5 (whereas clause), ¶¶ 4(a), (d) (emphasis added).

The Settlement Agreement also contains terms governing the consequences if its objectives are not achieved and the parties' full understanding and expectation of a return to the *status quo ante* as it existed before the Settlement Agreement. For example, 615 RRP's right to develop the Project was reflected in a Redevelopment Agreement approved by Edgewater on July 29, 2020. Paragraph 4(l) of the Settlement Agreement specifically states that in the event the Redevelopment Agreement is not executed, then the Settlement Agreement shall be null and void:

> 4(l).  In the event the Redevelopment Agreement is not entered into and executed by Edgewater then this Agreement shall be null and void and of no force or effect, including but not limited to, Paragraph 3 hereof, with the exception of Paragraphs 6 and 7 which shall survive and be enforceable without regard to the enforceability of the remainder of this Agreement.

*Id.* at ¶ 4(l).

Noticeably absent from this survival provision is any reference to Paragraph 3, which governs conveyance of the Western Parcel. To the contrary, Paragraph 3 is expressly made null and void upon a failure to deliver a valid Redevelopment Agreement.

Paragraph 3(a) of the Settlement Agreement states that "execution of the Redevelopment Agreement or rezoning of the Eastern Parcel at 615 RRP's request are conditions precedent to 615 RRP's obligation to convey the Western Parcel to Edgewater." Delivery of a valid Redevelopment Agreement is one of the Release Events that must occur before there may be any obligation to transfer the Western Parcel. *See* Settlement Agreement ¶ 3(a).

9

Consistent with that design is the mutual obligation under the Settlement Agreement to toll the statute of limitations on the prior actions leading up to the settlement and the preservation of all information in those actions in the event they need to be reopened following a successful Contesting Action.

> **MAINTENANCE OF *STATUS QUO ANTE*:** To ensure that the Parties' respective rights, claims and defenses are fully preserved, the parties agree that:
>
> (a) Edgewater hereby tolls and extends any otherwise applicable statute of limitations or statutes of repose relating in any way to the 615 Site, the ZBA Action, the iPark Action, the Federal Action and/or the acts and actions of Edgewater relating to the foregoing, until the date one (1) year following the later of (i) the failure of Edgewater to rezone the Eastern Parcel following a demand by 615 RRP for Edgewater to rezone the Eastern Parcel as set forth in Paragraph 4 hereof, **(ii) the disposition of any Contesting Action, including a Contesting Action related to such rezoning (including any rezoning subsequent to such demand by 615 RRP of the Eastern Parcel) that prevents 615 RRP from developing the Eastern Parcel with site and use criteria and standards that are functionally and substantially similar to the site and use criteria and standards set forth in the Redevelopment Agreement, inclusive of any and all site and use criteria so as to permit and enable 615 RRP to develop as of right the Eastern Parcel as such development is set forth in [sic] herein and in the Redevelopment Agreement** or (iii) any failure of Edgewater or its boards and agencies to approve the Redevelopment Plan and/or execute the Redevelopment Agreement (the "Tolled Date").

*Id.* ¶ 7(a) (emphasis added).

It is also clear from this section, which speaks to "disposition" of a Contesting Action, that Edgewater is misguided in its attempt to argue that the Release Event (for transferring the Western Parcel) was triggered once it filed an "answer" to the prerogative-writs complaints. We note that the term "contesting answer" is neither capitalized nor defined in the Settlement Agreement. It is plain from the above that a Contesting Action includes all filings, including an appeal, up through disposition of that action. Accordingly, Sections 4(h) and (i) of the Settlement Agreement ensure

that Contesting Action be interpreted broadly ("**as broadly and expansively as law and equity shall permit**") and that Edgewater's obligations extend through an appeal:

> (h) The Parties hereto acknowledge that a third party may contest some or all of the actions to be taken hereunder, any such actions to be considered a "Contesting Action." A Contesting Action shall be the filing of any legal action contesting, disputing or challenging in any way, in whole or in part: (i) the approval of this Settlement Agreement, (ii) the designation of the 615 Site as An Area in Need of Redevelopment, (iii) the designation of 615 RRP as the Redeveloper for the Eastern Parcel, (iv) the adoption of the Redevelopment Plan in substantial and material conformity with the plan set forth on **Exhibit E** hereto, (v) the execution and approval of the Redevelopment Agreement (as defined below), (vi) any zoning or re-zoning of the Eastern Parcel, including, but not limited to, pursuant to Para. 4(j) below, (vii) the residential use or construction of the Eastern Parcel as provided for by this Settlement Agreement (any such action (i) through (vii) being a "Contesting Action" the identification of any type of Contesting Action in this Agreement shall be considered a non-exclusive list and is without limitation of any type, kind or manner, **and is not intended to exclude any other type of Contesting Action and the term "Contesting Action" shall be interpreted as broadly and expansively as law and equity shall permit.**

> (i) In the event of the filing of a Contesting Action, Edgewater shall vigorously defend this Agreement and all actions taken pursuant to the terms of this Agreement, including (i) filing an Answer in any such Contesting Action, (ii) coordinating with 615 RRP Edgewater's defense therein (iii) entering into a joint defense agreement or common interest agreement to facilitate the defense of such action if appropriate. **In the event of the entry of a Judgment or Order that is materially adverse to 615 RRP in any such Contesting Action, Edgewater shall, in coordination with 615 RRP, timely file and diligently prosecute an appeal therefrom.**

*Id.* ¶¶ 4(h)-(i) (emphasis added).

It is plain also under the Settlement Agreement that the need for the Western Parcel on which to construct a school was expressly to accommodate the population expected to be generated by the Project. In that regard, the Settlement Agreement recites:

> WHEREAS, as a result of the size and unique geography of Edgewater, there exists the absence of a tract or tracts of land suitable for the construction of additional schools and recreational facilities necessary and desirable to accommodate the amount of school age children reasonably anticipated to be generated by the 1200 unit development contemplated by this Agreement,

11

including 180 or more units of Affordable Housing; and,

WHEREAS, there is a causal nexus between, on the one hand, the development of the Eastern Parcel contemplated by this Agreement, and on the other hand, an increase in the number of school age children who will reside in Edgewater and a resulting need for an additional school and recreational facility . . . .

*Id.* at 4-5.

**ARGUMENT**

**I.    THIS COURT SHOULD REFRAIN FROM DECIDING THIS MOTION PENDING DECISION IN THE STATE COURT ACTION.**

While the substantive lack of merit in Edgewater's motion is addressed below, 615 RRP submits as a threshold matter that this Court should refrain from considering the merits.

This Court has inherent authority to postpone a decision or stay proceedings pending resolution of a related action that may substantially affect or dispose of issues before it. *See infra* Point I.A. This Court should exercise that discretion here because if the state-court plaintiffs succeed on their challenge, the entire Settlement Agreement—including the provisions relating to the transfer of the Western Parcel—may be declared unenforceable under New Jersey state law. But if the state courts reject the challenges to the Settlement Agreement, there will be no dispute that Edgewater is entitled to the Western Parcel. *See infra* Point I.B. Alternatively, the Court should abstain from deciding the motion under the *Colorado River* doctrine. *See infra* Point I.C.

**A.    The Court has inherent authority to postpone decision on this motion pending resolution of the State Court Action.**

"A United States district court has broad power to stay proceedings." *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "In the exercise of its sound discretion, a court

may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel*, 544 F.2d at 1215.  Indeed, "[a] stay is particularly appropriate, and within the court's 'sound discretion,' where the outcome of another case may 'substantially affect' or 'be dispositive of the issues' in a case pending before a district court." *MEI, Inc. v. JCM Am. Corp.*, No. CIV. 09-351 (RBK/JS), 2009 WL 3335866, at *4 (D.N.J. Oct. 15, 2009) (citation omitted); *see also Mastec Renewables Constr. Co., Inc. v. Mercer Cnty. Improvement Auth.*, No. CIV. 15-1897 (FLW)(LHG), 2017 WL 6493141, at *5 (D.N.J. Dec. 19, 2017) (staying case and administratively terminating motion to dismiss because state-court action "substantially affects and is potentially dispositive of significant issues in the present litigation"). Among the factors to be considered are "whether a stay will simplify issues and promote judicial economy, the balance of harm to the parties, and the length of the . . . stay." *McDonald v. Novartis Pharms., Corp.*, No. CIV. 07-655 (JBS), 2007 WL 4191750, at *1 (D.N.J. Nov. 20, 2007) (internal quotation marks omitted).

Thus, this Court has authority, in its sound discretion and in the interest of judicial efficiency, to hold Edgewater's motion in abeyance or to deny it without prejudice.  As explained below, it should do so here because on July 21, 2022, the state court held a bench trial on the merits of claims that seek to invalidate the transfer of the Western Parcel specifically, and the entire Settlement Agreement generally, under New Jersey state law.  Deciding the motion now risks inconsistent judgments between the state and federal courts concerning the enforceability of the obligation to transfer the Western Parcel.

### B.    The State Court Action may substantially affect and is potentially dispositive of this motion.

The plaintiffs in the State Court Action contend that the provisions of the Settlement Agreement calling for transfer of the Western Parcel upon Edgewater's execution of the

Redevelopment Agreement are unlawful under New Jersey state law.  For example, SJ 660 argues that 615 RRP's "dedication of the Western Parcel . . . amounts to a 'purchasing' of zoning rights that New Jersey courts have long prohibited as contrary to public policy and the purposes of the MLUL [i.e., the New Jersey Municipal Land Use Law]."  Tr. Br. of Pl. SJ 660 LLC at 48, SJ 660 LLC v. Borough of Edgewater, No. BER-L-8788-19, Feb. 15, 2022 (Plawker Decl., Ex I).  The plaintiffs also argue that the Redevelopment Agreement—which, as a Release Event, triggered 615 RRP's obligation to transfer the Western Parcel—is void or otherwise invalid.  *See, e.g.,* Trial Tr. at 30:2-6 ("And because the designation [of the Eastern Parcel as an area in need of redevelopment] should be thrown out, so too should everything that flows from it:  the plan, the redevelopment agreement, financial agreement, planning board approvals.") (Plawker Decl., Ex. A).  The plaintiffs rely on cases holding that a municipality cannot approve zoning relief by contract without statutory public processes and cannot condition land-use approvals on contributions to the municipality.  *See Midtown Props., Inc. v. Twp. of Madison*, 172 A.2d 40, 45-47 (N.J. Super. Ct. Law Div. 1961) (holding that agreement to permit development without approval by planning board conditioned on payment of funds was "illegal and void"), *aff'd for reasons stated by trial court*, 189 A.2d 226 (N.J. Super. Ct. App. Div. 1963).

As both Edgewater and 615 RRP extensively explained in their briefs and at trial in the state court, the plaintiffs are wrong that the Settlement Agreement's provisions relating to the Western Parcel are illegal or unenforceable.  But there remains the possibility that the plaintiffs could prevail on that issue, thus invalidating the transfer of the Western Parcel.  This Court should not decide now whether 615 RRP has an obligation to transfer the Western Parcel, before the state courts decide whether that obligation is lawful under New Jersey state law.  To be clear, 615 RRP fully intends to abide by its obligations under the Settlement Agreement, including deeding the

14

Western Parcel to Edgewater—free and clear of encumbrances—once the state courts determine that the Settlement Agreement is enforceable.

Because the state-court claims specifically challenge the provisions relating to the Western Parcel, Edgewater cannot argue here that the obligation to transfer is somehow severable and enforceable even if the state courts rule in the plaintiffs' favor.  Such arguments contradict Edgewater's argument in the State Court Action that invalidating the Settlement Agreement would prevent the borough from obtaining the Western Parcel for a school.  *See* Trial Tr. at 87:12-18 (arguing against invalidating Settlement Agreement because "[w]e desperately need a school [and] [t]his gives us that property for free, which is a substantial benefit to the community"); *Id.* at 111:4-5 (arguing that if the Settlement Agreement is invalidated, then "[Edgewater] would have no place to put a new school") (Plawker Decl., Ex. A).  Edgewater cannot have it both ways, and it has recently acknowledged that transfer of the Western Parcel is at stake in the State Court Action.

Even putting aside the plaintiffs' specific challenge to the transfer of the Western Parcel in the State Court Action, this Court should wait for a final decision from the state courts because the plaintiffs also contend that the entire Settlement Agreement is "void *ab initio*" or "*ultra vires*" due to allege conflicts of interest and violation of state land-use statutes.  *See, e.g.*, Trial Br. of Pl. SJ 660 LLC at 28-33, 39-58 (arguing that the Settlement Agreement is void under various New Jersey statutes and common law) (Plawker Decl., Ex. I); Trial Tr. at 30:18-20 ("[W]e respectfully request that the Court invalidate the settlement agreement, declaring it void ab initio . . . .") (Plawker Decl., Ex. A).  The plaintiffs rely on cases declaring that settlement agreements relating to land use between municipalities and developers were "void ab initio" and thus unenforceable in their entirety.  *See, e.g.*, *Suski v. Mayor & Comm'rs of Borough of Beach Haven*, 333 A.2d 25, 28-29 (N.J. App. Div. 1975) ("[T]he agreement between the Spiegles and the borough on its face is

illegal, void and ultra vires. It is an attempt to do by agreement what can only be done by following the appropriate statutory procedure. The fact that the parties entered into a consent judgment which purported to approve the agreement does not make it a valid agreement." (citations omitted)); *Midtown Props.*, 172 A.2d at 45 ("This contract, on its face, is illegal and void. It is an attempt to do by contract what can only be done by following statutory procedure. . . . . Certainly, if the contract is illegal and void, having it incorporated in a consent judgment will not breathe legal life into it." (citation omitted)). Those arguments should also be rejected by the state court, and the cases on which the plaintiffs rely are inapposite. But if the state courts side with the plaintiffs, Edgewater's motion will be moot because the entire Settlement Agreement will be deemed void and thus without legal effect.

Finally, any harm to Edgewater from waiting for a decision in the state courts is strongly outweighed by the interests of judicial economy and the risks of inconsistent judgments. This Court should not waste resources deciding the motion when a judgment in the State Court Action will likely moot it: if the state courts uphold the Settlement Agreement, 615 RRP will transfer the Western Parcel to Edgewater; if it deems the transfer provisions or the entire agreement void, then Edgewater can have no right to the Western Parcel. Moreover, if this Court were to decide that 615 RRP must deed the Western Parcel now, and the state courts later decide in favor of the state-court plaintiffs, this Court would likely need to revisit how the property could be returned to 615 RRP. Deferring this motion until the state courts decide the plaintiffs' state-law challenge to the Settlement Agreement—which has already been tried and is awaiting decision—is the most prudent and reasonable course.

C.    **In the alternative, the Court should abstain under *Colorado River*.**

The Court also has authority to decline jurisdiction over the motion under *Colorado River*. Under that doctrine, a court may abstain when: (1) "there is a parallel state proceeding that raises "substantially identical claims [and] nearly identical allegations and issues," and (2) "extraordinary circumstances meriting abstention are present" under a multifactor test.  *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307-08 (3d Cir. 2009) (internal quotation marks omitted).  The relevant factors are: "(1) [in an in rem case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Id.* at 308 (internal quotation marks omitted).

As noted, the State Court Action raises the same issues as Edgewater's motion—whether the transfer of the Western Parcel is valid and whether the Settlement Agreement as a whole is enforceable.  In addition, the factors support abstention.  Regarding the first and fourth factors, the state court was first asked to decide those issues; this motion came years after the State Court Action was commenced.  This forum is convenient (second factor), but litigating here raises the problem of piecemeal litigation and potentially conflicting judgments (third factor), and the issues are governed by New Jersey state law (fifth factor).  Finally, the state courts can protect the parties' rights on whether the Settlement Agreement is valid and enforceable.  Indeed, the Settlement Agreement contemplates that this Court might decline jurisdiction to enforce the settlement and that the state courts would instead have jurisdiction.  *See* Settlement Agreement ¶ 15.

## II. EDGEWATER'S INTERPRETATION OF THE SETTLEMENT AGREEMENT IS WRONG.

If this Court does not hold the motion in abeyance, it should deny it on the merits because Edgewater is wrong that a plain reading the Settlement Agreement requires 615 RRP to transfer the Western Parcel before the State Court Action is resolved.

### A. Edgewater's **delivery** of a legally enforceable Redevelopment Agreement is a condition precedent to the obligation to transfer the Western Parcel.

The terms of the Settlement Agreement make clear that Edgewater must provide a *legally enforceable* Redevelopment Agreement as a condition precedent to receiving the Western Parcel. Because the legality of the Redevelopment Agreement is directly at issue in the State Court Action, 615 RRP is not yet obligated to transfer the Western Parcel.

Paragraph 3(a) of the Settlement Agreement states: "As set forth in Paragraph 4(1) hereof, the *execution* of the Redevelopment Agreement is a condition antecedent to the enforceability of this Agreement, and the execution of the Redevelopment Agreement or the rezoning of the Eastern Parcel at RRP's request, are conditions precedent to RRP's obligation to convey the Western Parcel to Edgewater."   Settlement Agreement ¶ 3(a) (emphasis added).   Paragraph 4(l) of the Settlement Agreement provides: "In the event the Redevelopment Agreement is not *entered into and executed* by Edgewater then this Agreement shall be null and void and of no force or effect, including but not limited to, Paragraph 3 hereof, with the exception of Paragraphs 6 and 7 . . . ." *Id.* ¶ 4(l) (emphasis added).

Those provisions expressly condition 615 RRP's obligation to transfer on Edgewater's "enter[ing] into and execut[ing]" a Redevelopment Agreement.  Edgewater contends that it has done so even though the New Jersey Superior Court is currently considering whether the Redevelopment Agreement is "void *ab initio*" as outside the legal capacity of Edgewater to provide or invalid for failure to comply with statutory requirements. *See supra* at 14-16.  But "execution"

of a contract means to "'to perform or complete (a contract or duty)' or 'to make (a legal document) *valid* by signing; to bring (a legal document) into its final, *legally enforceable form*.'" *Geraczynski v. Nat'l R.R. Passenger Corp.*, No. 11-6385 (SRC), 2015 WL 4623466, at *6 (D.N.J. July 31, 2015) (quoting *Black's Law Dictionary* (10th ed. 2014)) (emphasis added).  Similarly, the New Jersey Appellate Division has defined a "fully executed" contract as "a contract that was signed and binding," noting that "an executed contract also means that signatures, attestation requirements[,] and appropriate filings have been fully completed, *leaving no question as to the quality of the contract's formation*."  *Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Tax'n*, 999 A.2d 489, 496-97 (N.J. Super. Ct. App. Div. 2010) (quoting *The Law Dictionary* (2002 ed.)) (emphasis added).  Thus, if the Redevelopment Agreement is not "valid," not in "legally enforceable form," or in question as to its formation, Edgewater has not "executed" it under the plain meaning of that term.

That interpretation also accords with the purpose of the provisions relating to transfer of the Western Parcel.  *See Marchak v. Claridge Commons, Inc.*, 633 A.2d 531, 535 (N.J. 1993) (holding that courts should consider contract's purpose when interpreting it).  The parties bargained for transfer of the Western Parcel in consideration for Edgewater following the required statutory processes to seek designation of the Eastern Parcel as an area in need of redevelopment, which would permit 615 RRP to act as the redeveloper of the property under the LRHL.  If the Redevelopment Agreement is no contract at all—as the plaintiffs in the State Court Action contend—then 615 RRP would not receive the benefit of that bargain.  Instead, it would be required to turn over the Western Parcel in exchange for a legally unenforceable and invalid document.  Moreover, the parties agreed to transfer of the Western Parcel because the Eastern Parcel's development could further impact Edgewater's overburdened school system.  *See supra* at 12, 15-

19

16.  If Edgewater need only deliver an invalid or void Redevelopment Agreement, then 615 RRP's Project will not be built, and the development will not impact the school system.

### B.     Other provisions of the Settlement Agreement support that conclusion.

In interpreting a contract, "[t]he document is to be read as a whole, without artificial emphasis on one section, with a consequent disregard for others." *Phoenix Pinelands Corp. v. Davidoff*, 254 A.3d 1190, 1259 (N.J. Super. Ct. App. Div. 2021).  Moreover, "'[w]ords and phrases are not to be isolated but related to the context and the contractual scheme as a whole, and given the meaning that comports with the probable intent and purpose.'"  *Republic Bus. Credit Corp. v. Camhe-Marcille*, 887 A.2d 185, 188 (N.J. Super. Ct. App. Div. 2005) (quoting *Newark Publishers' Ass'n v. Newark Typographical Union*, 126 A.2d 348, 352-53 (N.J. 1956)).  Thus, in interpreting the provisions relating to transfer of the Western Parcel, this Court should also consider the provisions relating to "Contesting Actions."  As explained above, the parties agreed to maintain the status quo ante through all appeals in a Contesting Action.  *See supra* at 10-11.

As noted, *supra* at 11, the term "contesting answer" is neither capitalized nor defined in the Settlement Agreement.  But given the broad definition of Contesting Action, contesting answer must be similarly broad.  Both are informed by other language noted that speaks to **disposition** of a Contesting Action and **appeals**.  Indeed, in the event 615 RRP loses in the State Court Action, the entire approval process may have to commence from scratch, which might engender new Contesting Actions from the objectors that will necessarily require Edgewater's further opposition.

Plainly, the parties understood and agreed that the Settlement Agreement would not bind the parties in the event, among other things, that an objector prevailed in a Contesting Action that fundamentally thwarted 615 RRP's development rights.  In addition, Paragraph 3, governing conveyance of the Western Parcel, is not among the provisions that the parties agreed would

survive if the Settlement Agreement (and by extension the Redevelopment Agreement) were voided.  Settlement Agreement ¶ 4(l).  A holistic interpretation would also explain—not wholly ignore—the expressly stated "nexus" between the Project and the school-aged children resulting from the Project.  As noted, the very need for the Western Parcel and the school is specifically based on a need to accommodate the population expected to be generated by the Project.  The notion that 615 RRP agreed essentially to 'donate' a school property to Edgewater unconnected to the Project finds no support in the Settlement Agreement.

There is no support either for Edgewater's position that two separate time tracks were specifically considered and should dictate this motion for specific enforcement.[2]   Contracts typically have different deadlines for all sorts of things such as payment, delivery, and other performance.  None of that informs whether a contract that is ultimately deemed illegal gives rise to a claim for specific performance of an isolated obligation.

And contrary to Edgewater's exclusive focus on the Western Parcel provisions, "'[a] subsidiary provision is not to be interpreted so as to conflict with the obvious 'dominant' or 'principal' purpose of the contract.'"  *Healy v. Fairleigh Dickinson Univ.*, 671 A.2d 182, 185 (N.J. Super. Ct. App. Div. 1996) (quoting *Newark Publishers'*, 126 A.2d at 352).  As is evident from the extensive litigation history and the Settlement Agreement itself, the core dispute has concerned 615 RRP's right to develop the Project.  Not surprisingly, therefore, the primary focus of the Settlement Agreement is the development of the Project, not conveyance of the Western Parcel.

Not only is Edgewater's piecemeal approach to contract interpretation without legal support, but its hyper-literal attempt to string together terms pertaining to the timing of the deed

---

[2] We note in passing that Edgewater's use of the term "must" in the phrase "the Western Parcel *must* be conveyed to Edgewater . . ." appears nowhere in the Settlement Agreement.  On a claim for specific performance this is curious license indeed.  Edgewater Br. at 4.

conveyance and the conditions therefor (Release Event and within 60 days from execution of the

Redevelopment Agreement) are similarly at odds with basic principles of contract interpretation.

> The general purpose of the agreement is to be considered in ascertaining the sense of particular terms. The literal sense of particular words or clauses may be qualified by the context and given the meaning that comports with the probable intention. It is the revealed intention that is to be effectuated, the sense that would be given the integration by a reasonably intelligent person.

*J.L. Davis & Assocs. v. Heidler*, 622 A.2d 923, 926-27 (N.J. Super. Ct. App. Div. 1993).  Stated

differently:

> Greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. A contract must be construed as a whole and the intention of the parties is to be collected from the entire instrument and not from detached portions. Individual clauses and particular words must be considered in connection with the rest of the agreement, and all parts of the writing and every word of it, will, if possible, be given effect;' the words are to be given a 'reasonable meaning rather than an unreasonable one and a court will endeavor to give a construction most equitable to the parties and which will not give one of them an unfair or unreasonable advantage over the other.

*Krosnowski v. Krosnowski*, 126 A.2d 182, 188 (N.J. 1956) (citation and internal quotation marks

omitted).

### C.     Select provisions of an illegal contract cannot be enforced if the essence or purpose of the contract is frustrated.

Edgewater's attempt to enforce isolated provisions related exclusively to the Western

Parcel notwithstanding the potential that the entire Settlement Agreement may be deemed *void ab*

*initio* in the State Court Action must be rejected because, as a matter of law, if the primary purpose

of a contract is deemed illegal, the entire contract is rendered unenforceable.  As the New Jersey

Supreme Court has made clear: "If striking the illegal portion defeats the primary purpose of the

contract, we must deem the entire contract unenforceable.  However, if the illegal portion does not

defeat the central purpose of the contract, we can sever it and enforce the rest of the contract." *Jacob v. Norris McLaughlin & Marcus*, 607 A.2d 142, 154 (N.J. 1992).

In effect, Edgewater contends that, even if the Settlement Agreement and 615 RRP's development rights are struck down in the State Court Action, the isolated terms pertaining to the Western Parcel must still be enforced. But the Settlement Agreement's central purpose is to "resolve the[] [Parties'] differences and to put an end to costly litigation in a manner that appropriately benefits both the Parties and the public, including but not limited to, Edgewater, its taxpayers, and the general public in Edgewater." Settlement Agreement at 4 (whereas clause); *see also Jacob*, 607 A.2d at 154 (looking to preamble to determine contract's primary purpose). The parties resolved their dispute by agreeing to a smaller development on the Eastern Parcel subject to the required review and approval under state land-use statutes and transfer to Edgewater of the Western Parcel for construction of a school to offset "an increase in the number of school age children who will reside in Edgewater and a resulting need for an additional school and recreational facility" due to the development on the Eastern Parcel. Settlement Agreement at 5 (whereas clause). Thus, even if the provisions relating to the Western Parcel are not themselves declared illegal or invalid and only those relating to the redevelopment are invalidated, it will defeat the central purpose of the agreement, and 615 RRP cannot be obligated to transfer the Western Parcel.

**D.    615 RRP's performance obligations may be excused by Edgewater's breaches.**

Edgewater contends that 615 RRP's failure to convey the Western Parcel according to a timeline in the Settlement Agreement—as characterized by Edgewater and critiqued above— constituted a breach of contract, thereby ripening Edgewater's claim for specific performance.

But again, Edgewater's analysis is far too superficial and narrow. As explained, *supra* 7-8, with respect to the provisions in the Settlement Agreement requiring compliance with the

23

MLUL, LRHL, and other law, those are Edgewater's obligations.  Its governing body is the only party with control over whether approval of the Settlement Agreement and designation of the Eastern Parcel as an area in need of redevelopment were done in accordance with applicable law.

Anticipating this vulnerability in its argument, Edgewater offers up circular and self-defeating logic that goes to the core of this opposition—the impact on the Settlement Agreement of the pending disposition of the State Court Action.  Thus, Edgewater argues:

> No Court has found that any aspect of the Federal Settlement Agreement – which 615 vigorously defended in the Contesting PW Action – was internally inconsistent or violated any law, regulation, or obligation.

Edgewater Br. at 21.  Edgewater ignores the unmistakable fact that if the Settlement Agreement is deemed unlawful, then Edgewater will be in breach.  If the state courts determine that applicable law was not followed, then Edgewater breached the Settlement Agreement and 615 RRP's further performance is excused.

It is black-letter contract law that a material breach by a party to a bilateral contract excuses the other party from rendering any further contractual performance.  *Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990); *Ross Sys. v. Linden Dari-Delite, Inc.*, 173 A.2d 258, 265 (N.J. 1961); *Restatement (Second) of Contracts* § 237 (1981).  As noted, the core of this dispute and the Settlement Agreement are grounded—and have always been grounded—in 615 RRP's right to pursue lawful development of the Project.  Nothing could be more material.  If the process in the Settlement Agreement for that purpose and Edgewater's implementation of the process were unlawful, then Edgewater will have breached its material obligations and representations under the Settlement Agreement.

24

III.    **EDGEWATER HAS NOT SHOWN AN ENTITLEMENT TO ANY OTHER RELIEF SOUGHT IN LAW OR EQUITY.**

A.    **There is no evidence of ill motive as required to maintain a claim for breach of the covenant of good faith and fair dealing.**

As a general rule, "[a] plaintiff may be entitled to relief under the covenant if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396 (N.J. 2005). "[P]roof of 'bad motive or intention' is vital to an action for breach of the covenant." *Id*. To argue, as Edgewater does, that 615 RRP is acting with ill-will and without legitimate purpose is borderline frivolous. In addition to the patently good-faith disputes regarding the language and intent of the Settlement Agreement, maintaining the status quo pending the State Court Action that will determine whether the entire Settlement Agreement was void *ab initio* is eminently reasonable and consistent with a fully integrated reading of the contract. Edgewater's claim for breach of the covenant of good faith and fair dealing should therefore be rejected.

B.    **There is no basis for an order of contempt.**

Edgewater's request for a contempt order should also be denied. To obtain the "severe remedy" of civil contempt, Edgewater must show that there is no "fair ground of doubt" that 615 RRP violated the Settlement Agreement as incorporated into this Court's order of dismissal. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) (internal quotation marks and emphasis omitted). As explained, 615 RRP has not violated the Settlement Agreement, but there is at least substantial room for debate on whether it has an obligation to transfer before the state courts resolve whether the Settlement Agreement is void or unenforceable in whole or in part. Moreover, in support of the extreme relief sought, Edgewater offers speculative and inappropriate rationales: "a negative change in the school construction market that may occur" and that "615 should be

incentivized to get its house in order." Edgewater Br. at 40.  These casual arguments are without legal support.

Indeed, Edgewater's reliance on *Edmondson v. Lilliston Ford, Inc.*, Civil No. 13-7704 (RMB/MJS), 2021 WL 2651143 (D.N.J. June 24, 2021), in support of a contempt order highlights the extent of Edgewater's overreach.  In *Edmonson*, the Court and the defendant who obtained a favorable arbitration award later confirmed by a judgment, had been trying for years to compel the plaintiff's compliance.   After repeated refusals by the plaintiff, the Court entered an order of contempt as a last resort, finding:

> Throughout this litigation, Plaintiff has engaged in a pattern of contumacious behavior. [   ] But Plaintiff's repeated attempts to flout this Court's Orders and avoid satisfying judgments entered against her have prolonged this case by several years— even after accounting for Plaintiff's appeal of the Court's 2017 Order. Indeed, Plaintiff has a predictable leitmotif: file a motion to challenge some action, receive an adverse ruling, appeal, and repeat.
>
> . . .
>
> Moreover, Plaintiff's inexcusable litigation practices are not limited to simply evading the Court's Orders. For example, Plaintiff has routinely filed Motions to Disqualify the undersigned due to her dissatisfaction with the Court's Orders and Opinions. . . .
>
> But this delay must end. Accordingly, the Court will now take a more active role in this matter to prevent Plaintiff from further abusing and making a mockery of the judicial system. In that regard, the Court turns to the issue of civil contempt.

*Id.* at *2.

The circumstances here do not begin to resemble those in *Edmondson* or in any case that led to an order of contempt.  Here, for the reasons stated throughout this brief, the parties are at the first stage of a disagreement, and there is no basis in the record upon which to conclude that 615 RRP's defenses—firmly grounded in the very language of the Settlement Agreement and the

procedural posture of the State Court Action—are "contumacious," "inexcusable," or part of "a pattern" of misconduct or delay.

By Edgewater's construct, 615 RRP should be subject to contempt because, if the state courts determine that the Settlement Agreement was unlawful, Edgewater will have been in breach of its core obligation to ensure that the settlement and redevelopment processes were undertaken lawfully. Such logic turns the equities on their head. As Edgewater freely and appropriately acknowledges, it and 615 RRP stood side-by-side at trial a mere month ago to present to the state court why the prerogative writ challenges should be dismissed. To argue, just weeks later, that 615 RRP has been contumacious and has engaged in a pattern of misconduct is obviously disingenuous, and Edgewater's request that 615 RRP be held in contempt should be rejected.

### C.     There is no basis to create or prioritize a lien.

Nor is there any basis in this case to justify giving Edgewater a lien on the Western Parcel and then giving that lien a priority over other unnamed and unnoticed creditors. Edgewater would have this Court believe that 615 RRP has somehow benefitted by the delay in having its development rights vindicated. But in fact, 615 RRP has incurred real- property taxes, interest payments on financing, and has been delayed by nearly three years in starting construction. 615 RRP has been harmed, not benefitted, by the delay in adjudicating its rights.

Preliminarily, nothing in the Settlement Agreement prohibits 615 RRP from incurring debt. The issue is simply that when the time comes to deliver the Western Parcel, it be delivered unencumbered. For all for the reasons set forth above, that time has not yet come. Moreover, while Edgewater observes in its brief that 615 RRP is sophisticated, that must be true of Edgewater too, which cannot now allege shock and dismay to learn that 615 RRP has had to carry its financing

since 2015, when it first acquired the Property, to the present.  That burden has fallen squarely on 615 RRP, and for Edgewater to seek now to accelerate that hardship on 615 RRP—particularly while its development rights remain uncertain—and all while Edgewater incurs no risk or uncertainty, would turn principles of equity on their head.  In effect, Edgewater would have this Court accept that 615 RRP has been "unjustly enriched" by what Edgewater states is $38 million in debt.

In support of its lien claim, Edgewater relies on *Wong v. Ford*, Civil Action No. 05-3501 (AET), 2008 WL 11511395 (D.N.J. Feb. 28, 2008).  *Wong* is easily distinguished as the issue there had nothing to do with whether the parties' settlement agreement to convey unencumbered real estate was a valid agreement, whether the plaintiff might have breached the agreement, or whether any other language in the agreement shed light on the parties' intent with respect to the conveyance.  Instead, in *Wong*, the dispute was limited to whether the performance by a third party—outside of the settlement agreement—was a condition precedent to the defendant's obligation to make the unencumbered conveyance.  In the present case, several threshold issues, including the validity of the Settlement Agreement pending in state court, Edgewater's own potential breach, and myriad provisions in the Settlement Agreement demonstrating a return to the *status quo ante*, all distinguish it from *Wong* and defeat any claim to the type of settled right that would give rise to a lien.

Moreover, Edgewater's attempt to invoke what is primarily a bankruptcy remedy—equitable subordination of a lien—based on a dubious breach of contract claim, is seemingly unprecedented.  *See* Edgewater Br. at 35-37.  Apparently, Edgewater believes that other creditors of 615 RRP are not entitled to notice of this attempt to eclipse their rights.  In this respect, Edgewater ignores that no such subordination can occur if it is inconsistent with the Bankruptcy

Code, including its notice provisions, and omitted that element from its discussion even though such compliance is stated in the case upon which Edgewater relies. *See In re Steel Wheels Trans., LLC*, Bankr. No. 06–15377 DHS, 2011 WL 5900958, at *6 (Bankr. D.N.J. Oct. 28, 2011).  Further illustrating Edgewater's improper attempt to invoke the doctrine of equitable subordination is its reliance on *Biviano v. Avella*, No. A–1778–15T4, 2018 WL 2207977 (N.J. Super. Ct. App. Div. 2018) (a nonprecedential decision on which other New Jersey courts cannot rely pursuant to N.J. Ct. R. 1:36-3), in which the Appellate Division rejected such a claim and found no such recognition of such a doctrine outside of bankruptcy or in instances requiring a determination of priority among competing mortgages.

**D.      There is no basis for imposition of a constructive trust.**

Similarly unavailing is Edgewater's conclusory request for imposition of a constructive trust over the Western Parcel.  A constructive trust should "be used only when the equities of a given case clearly warrant it." *Flanigan v. Munson*, 818 A.2d 1275, 1283 (N.J. 2003). The party seeking imposition of a constructive trust bears the burden of establishing its right to that remedy by **clear and convincing evidence**. *Dessel v. Dessel*, 299 A.2d 410, 411 (N.J. Super. Ct. App. Div. 1972).  Under this standard, the party seeking the remedy "should produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Liberty Mut. Ins. Co. v. Land*, 892 A.2d 1240, 1244 (N.J. 2006).

"[T]he imposition of a constructive trust requires a two-part finding that the res has been received or retained through a 'wrongful act' which 'unjustly enriches' the recipient." *Thompson v. City of Atl. City*, 901 A.2d 428, 439 (N.J. Super. Ct. App. Div. 2006) (quoting *Flanigan*, 818 A.2d at 1281).  A wrongful act is typically "fraud, mistake, undue influence, or breach of a

confidential relationship," *D'Ippolito v. Castoro*, 242 A.2d 617, 619 (N.J. 1968), but can include

"innocent misstatements, or even simple mistakes," *Flanigan*, 818 A.2d at 1281.

Edgewater has made no showing, let alone by clear and convincing evidence, that 615 RRP

has committed a "wrongful act" tantamount to fraud or other compelling circumstance to warrant

such an extraordinary remedy.  Edgewater's claim is essentially grounded in breach of contract.

Even if Edgewater's interpretation of the Settlement Agreement were correct—which it is not—

and conveyance of the Western Parcel were somehow wholly independent of any other obligation

or consideration under the Settlement Agreement, the equities alleged by Edgewater regarding the

need for a new school cannot prevail where that need will not exist if the Project is not built.  If

anything, equity favors 615 RRP, which clearly did not agree to convey a valuable piece of real

estate to Edgewater without any consideration.

## CONCLUSION

For all of the foregoing reasons, Edgewater's motion should be stayed or denied.

**GREENBERG TRAURIG, LLP**          **PASHMAN STEIN WALDER HAYDEN, P.C.**
*Co-Counsel for Plaintiff*                       *Co-Counsel for Plaintiff*

By: */s/ Cory Mitchell Gray*                    By: */s/ Roger Plawker*
       CORY MITCHELL GRAY                        ROGER PLAWKER


Dated:  September 6, 2022

30